UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MOHAMMED H. DAMRA,** ) | **CASE NO. 1:05CV0929** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs, ) | |
| ) | **OPINION AND ORDER** |
| ) | |
| **MICHAEL CHERTOFF,** ) | |
| **DEPARTMENT OF HOMELAND** ) | |
| **SECURITY, ET. AL.,** ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon Defendant's motion to dismiss due to lack of subject matter jurisdiction, lack of jurisdiction over the person, insufficiency of process, and insufficiency of service of process pursuant to Rules 12(b)(1), (2), (4), and (5) respectively (ECF DKT # 6). For the reasons that follow, Defendant's motion to dismiss is granted.

**I. FACTUAL BACKGROUND**

Plaintiff Mohammed H. Damra ("Damra") is a Syrian-born citizen of Jordan, and has been a permanent resident of the United States for nearly ten years, having received his "green card" on November 18, 1996. On August 27, 2001, Damra applied for naturalization via a N-400 Form, Application for Naturalization. On October 14, 2003, Damra was interviewed by an examiner at the United States Citizenship and Immigration Service ("USCIS") in the Cleveland office, however, the interview did not result in a decision regarding his application, and in

response to an inquiry form filed by Damra, on March 18, 2005, the USCIS indicated that they were still awaiting the completion of his required background check. On April 8, 2005, approximately four years after Damra had submitted his Application for Naturalization, he filed a Petition for Hearing on the Naturalization Application in the United States District Court pursuant to 8 U.S.C. § 1447. On May 20, 2005, the Department of Homeland Security ("DHS") responded with a Motion to Remand to the USCIS in order to complete Damra's ongoing background investigation, and on June 17, 2005, DHS filed a Motion to Dismiss for lack of subject matter jurisdiction, lack of jurisdiction over the person, insufficiency of process, and insufficiency of service of process pursuant to Rules 12(b)(1), (2), (4), and (5) respectively.

Before an individual may be naturalized, a USCIS employee must conduct a background investigation of the applicant, covering the applicant's activities for at least five years immediately preceding the filing of the application. 8 U.S.C. § 1446(a). The USCIS background investigation includes: (a) a record check of the alien made against DHS' internal immigration system; (b) a Federal Bureau of Investigation ("FBI") fingerprint check for criminal history, arrests, and convictions; (c) a check against the DHS-managed Interagency Border Inspection System, which contains "watch list" information from more than twenty federal law enforcement and intelligence agencies; and (d) an FBI name check, which is run against internal FBI databases. (Declaration of Kim Adams, Assistant District Director of Cleveland, Ohio USCIS, at ¶ 2.) Current USCIS policy requires that all security and background checks must be completed before the granting of an application for naturalization, as to ensure that there are no present security issues that would make an applicant ineligible.

An applicant for naturalization is required to demonstrate that he or she has been, and

continues to be, a person of "good moral character." 8 C.F.R. § 316.10. An applicant will be found to be lacking good moral character if he or she is found to have been involved with crimes involving moral turpitude, controlled substances, giving of false testimony for the benefit of the naturalization process, felonies, or murder. *Id.*; 8 U.S.C. § 1101(a)(43). The USCIS background investigation process has, on occasion, revealed such disqualifying information, and has resulted in rejection of the naturalization application, deportation, and/or arrest. (Declaration of Kim Adams at ¶ 3.) USCIS has not received confirmation from the FBI that Damra's full criminal background investigation has been completed, the FBI fingerprint check has expired, and, as a result, for approximately the past five years, Damra's application for naturalization has been pending.

## II. LAW AND ANALYSIS

**Rule 12(b)(1); Standard of Review**

Federal courts are not courts of general jurisdiction, having only the power authorized by Article III of the Constitution and the attendant statutes enacted by Congress. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Plaintiff argues that the court has subject matter jurisdiction over the instant case pursuant to 8 U.S.C. § 1447(b). 8 U.S.C. § 1447(b) provides (emphasis added):

> If there is a failure to make a determination under section 1446 of this title *before the end of the 120-day period after the date on which the examination is conducted* under such subsection, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Defendant argues that pursuant to Rule 12(b)(1), this court is without subject matter jurisdiction to hear the case because 120 days have not passed since the completion of the examination, and, therefore, Plaintiff has no mechanism by which to bring the instant action. Whether this court has subject matter jurisdiction hinges upon the statutory meaning of "examination" in 8 U.S.C. § 1447(b). Plaintiff asserts that the examination is synonymous with Damra's October 14, 2003 USCIS interview, and since 120 days have elapsed since the interview, this court has subject matter jurisdiction over the resolution of the application's status. However, the court finds persuasive the holding in *Danilov v. Aguirre*, 370 F. Supp.2d 411 (E.D. Va. 2005), that the "examination" of an application for naturalization is a process, not an isolated event; and that process includes all facets of the USCIS background investigation, including the FBI's criminal background investigation, which, in the instant case, is as yet incomplete. Having established that dismissal is proper under Rule 12(b)(1), this court finds it unnecessary to address the merits of dismissal under Rules 12(b)(2), (4), and (5).

      This court finds the language of 8 U.S.C. § 1446(b) illustrative in establishing that the examination is comprised of an investigative process that can include steps beyond that of an individual interview with the applicant. The language of 8 U.S.C. § 1446(b) provides:

> The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by [subpoena] the attendance and testimony of witnesses, including applicant, before such employee is designated and the production of relevant books, papers, and documents, . . .

Furthermore, Congress has added an additional requirement: the completion of a criminal

-4-

background investigation to accompany those steps required under 8 U.S.C. § 1446(b). The Department of Justice Appropriations Act ("DJAA"), 1998, Pub. L. No. 105-119, Title I, 111 Stat. 2440, 2448 (1997), provides that:

> [N]one of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed . . .

To ensure compliance with the DJAA, the Immigration and Naturalization Service adopted a regulation which required that no examination begin until after the agency had received the complete report of the FBI's criminal background investigation. 8 C.F.R. § 335.2(b) provides:

> The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.

It is well recognized that immigration officials have a duty to process naturalization applications within a reasonable time frame. *Fraga v. Smith*, 607 F. Supp 517 (D.Or. 1985); *Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2nd Cir.). However, evidence suggests the "delay" in resolving Damra's naturalization application is the result of USCIS conducting the examination out of order and in violation of its own regulations.

### III. CONCLUSION

It is essential for USCIS to make a fully-informed decision regarding any application for naturalization, and as a matter of law, USCIS cannot move forward on a naturalization

application without first receiving confirmation from the FBI that a complete criminal background investigation has been completed.  However, USCIS does not have the authority to expedite the process by which the FBI conducts its criminal background investigations. While the court recognizes that a permanent resident  is entitled to a decision made pursuant to his or her naturalization application within a reasonable amount of time, the language of 8 U.S.C. 1447(b) does not give this court subject matter jurisdiction to act upon Damra's petition until 120 days after the completion of the examination, and the examination cannot be deemed complete until the FBI has concluded to its own satisfaction that Damra is without a disqualifying criminal history.  Defendant's motion to dismiss is granted.

**IT IS SO ORDERED.**

**DATE: June 23, 2006**

>  s/Christopher A. Boyko
>  **CHRISTOPHER A. BOYKO**
>  **United States District Judge**